UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff*<br>  v.<br>FRANK DESANTO,<br>    *Defendant*. | Crim. Action No.: 3:20-cr-00206<br><br>**MEMORANDUM AND<br>ORDER GRANTING<br>EARLY TERMINATION<br>OF SUPERVISED RELEASE** |

  Defendant Frank DeSanto ("Defendant" or "DeSanto") brings this *pro se* Second Motion for Early Termination of Supervised Release. (Def.'s Second Motion, ECF No. 7). The Government opposes the motion. (Govt.'s Second Opposition, ECF No. 8). Oral argument was held on November 15, 2021. For the reasons stated in this memorandum, Defendant's motion is granted.

  On April 6, 2018, DeSanto pleaded guilty to one count of Conspiracy to Distribute and Possession with Intent to Distribute Heroin, 21 U.S.C. § 841(b)(1)(C), before the United States District Court for the Southern District of New York (SDNY) (Case No. 17-cr-495-12). (Govt.'s First Opposition 1, ECF No. 5). Pursuant to the presentence report, DeSanto's guideline calculation was an offense level of 13, and a criminal history category of III. (PSR ¶3). The provisions of the plea included waiving the Defendant's right to appeal, and to collaterally challenge portions of the agreed upon sentence.

  On September 4, 2018, DeSanto was sentenced to sixteen months imprisonment and four years of supervised release. (SDNY Judgment, ECF No. 2-2). On October 12, 2018, DeSanto

1

was released from prison and he began his term of supervised release, which ends on October 11, 2022.  (Transfer of Jurisdiction Order, ECF No. 1).

On October 21, 2020, DeSanto moved *pro se* to terminate his term of supervised release early.  (Def.'s First Motion, ECF No. 4).  The Probation Office opposed the motion, noting legal drugs commonly used to evade detection of anabolic steroids were found in DeSanto's system,[1] and further, DeSanto had recently experienced significant weight loss, something common among anabolic steroid users.  (Letter Order of Nov. 30, 2020, ECF No. 6).  Accordingly, the Court denied DeSanto's Motion for Early Termination of Supervised Release.  The Court noted:

> Although Mr. DeSanto appears to be rehabilitating in good stride, the Court is concerned with his prior use of Anastrozole and Finastride.  As such supervision should continue.  Mr. DeSanto has accomplished much including a new job with Recovery Centers of America, and he may apply for termination of supervised release at a time when [his] Probation Officer and he deem a sufficient period of drug rehabilitation has occurred.

(ECF No. 6 at p. 3).

On July 19, 2021, DeSanto filed his Second Motion for Early Termination of Supervised Release.  (Def.'s Second Motion, ECF No. 7).  He notes that he has not violated the terms of his supervised release for the last three years, he has been sober for four years, and he is employed as an intervention specialist in the emergency room of Robert Wood Johnson Hospital.  (*Id.*).  The Probation Office has taken no position but noted at oral argument that DeSanto "meets the minimal criteria for early termination."

The Government opposes the motion for several reasons.  (Govt.'s Second Opposition, ECF No. 8).  First, the plea agreement precludes any motion for early termination of his term of supervised release, because he waived his right to "direct appeal" or "collateral challenge" to

---

[1] Apparently, DeSanto had been prescribed those medications, although the record does not explain why he was prescribed them.  (Letter Order of Nov. 30, 2020 1, ECF No. 6).

"any sentence within or below the Stipulated Guidelines Range." (*Id.* at 1).  The Government argues that DeSanto's sentence of supervised release falls within the statutory range and was below the Stipulated Guidelines Range.  (*Id.*).  Secondly, the Government submits that even if DeSanto could seek early termination of his term of supervised release, early termination is not warranted because the § 3553 factors weigh against his request, namely the nature of DeSanto's conviction, his criminal history, and his drug use (including his use from August 2019 until February 2020 of medications used to evade detection of anabolic steroid use).

### I.

Under 18 U.S.C. 3583(e)(1), "after the expiration of one year of supervised release" a district court may terminate supervised release "pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation."  The Guide to Judiciary Policy, Vol. 8, Ch. 3, Section 3 60.20(c) endorses six criteria to determine if an offender satisfies the minimal statutory factors to be considered for early termination.  If those criteria are met, a district court must then consider the relevant sentencing factors.  18 U.S.C. 3583(e).

Nevertheless, a defendant may forfeit the right to seek early termination of supervised release through a waiver of his right to appeal[2], provided:  "(1) [] the issues [defendant] pursues on appeal fall within the scope of his appellate waiver and (2) that he knowingly and voluntarily agreed to the appellate waiver, unless (3) enforcing the waiver would work a miscarriage of justice."  *United States v. Damon*, 933 F.3d 269, 272 (3d Cir. 2019) (quoting *United States v. Corso*, 549 F.3d 921, 927 (3d Cir. 2008)).

Generally, "plea agreements, although arising in the criminal context, are analyzed under contract law standards."  *Damon*, 933 F.3d at 272 (quoting *United States v. Corso*, 549 F.3d 921,

---

[2] Rather than use of the phrase waiver of a right to appeal, it is referred to as post-sentencing waiver to clarify that it applies to both appeals and collateral attacks.

927 (3d Cir. 2008)).  A court must examine the text of a plea agreement and then determine whether the language is ambiguous.  *Id.* at 272-73.  "[W]aivers of appeals should be strictly construed."  *United States v. James*, 928 F.3d 247, 252 (3d Cir. 2019) (quoting *United States v. Khattak*, 273 F.3d 557, 562 (3d Cir. 2001).  Plea agreements will not "be construed in such a manner so as to render" terms "meaningless."  *See United States v. Nance*, 500 Fed. Appx. 171, 177-78 (3d Cir. 2012).  At the same time, any ambiguity in a plea agreement is construed against the drafter.  *United States v. Gebbie*, 294 F.3d 540, 551-52.  "Because of the Government's advantage in bargaining power, [the Third Circuit], and numerous other courts of appeals, construe ambiguities in plea agreements against the Government."  *Id.* at 552.

The Government argues that this case is analogous to the *Damon* case; however, the language within the plea agreement of *Damon* is distinguishable from the language here.  In *Damon*, the defendant agreed and waived within the plea agreement as follows:

> the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 33.

933 F.3d at 271.  The *Damon* court held that this language clearly waived the defendant's right to seek a reduction in his term of supervised release, determining that the use of the word "sentence" encompassed both a term of imprisonment and a term of supervised release.  *Id.* at 273-74.  The *Damon* court also found the word "challenge" in the post-sentencing waiver encompassed both direct appeals and collateral attacks of the defendant's sentence, including the defendant's motion to terminate his supervised release.  *Id.* at 274-75.

In contrast, DeSanto's plea agreement is more ambiguous than the post-sentencing waiver in *Damon*:

> It is agreed <u>(i) that the defendant will not file a direct appeal; nor bring a collateral challenge</u>, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241; nor seek a sentence modification pursuant to Title 18, United States Code, Section 3582(c), of any sentence within or below the Stipulated Guidelines Range of 18 to 24 months' imprisonment, and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines Range. . . . . Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation. . . . . <u>The defendant further agrees not to appeal any term of supervised release</u> that is less than or equal to the statutory maximum.

(Plea Agreement at 4) (emphasis added). Initially, the post-sentencing waiver appears to bar any appeal or collateral challenge of DeSanto's entire sentence including his term of imprisonment and term of supervised release. However, the underlined sentence at the bottom of the post-sentencing waiver specifies that DeSanto may not appeal a term of supervised release, but it does not address a collateral challenge. In reading the full text of the post-sentencing waiver, one could be confused as to its scope. Certainly, anyone in DeSanto's shoes would be confused. Generally, "[w]here the petitioner only waives the right to appeal, he is not precluded from filing a petition for collateral review." *United States v. Linder*, 552 F.3d 391, 397 (4th Cir. 2009) (internal quotation marks omitted).[3] DeSanto's plea agreement was drafted by the Government. Therefore, the Court must construe any ambiguity in the language against the Government. *Gebbie*, 294 F.3d at 551-52. As such, DeSanto may move to terminate his supervised release under his plea agreement. If the Government intended to bar DeSanto's right to seek early

---

[3] The verb "appeal" can be understood as meaning, "[t]o seek review (from a lower court's decision) by a higher court." Black's Law Dictionary 113 (9th ed. 2009). In contrast, "[b]y definition, a collateral attack is an attack on a judgment in a proceeding *other than a direct appeal*." *Wall v. Kholi*, 562 U.S. 545, 551-52 (2011) (quoting Black's Law Dictionary at 298) (emphasis added) (internal quotation marks omitted) ; *see also United States v. Braddy*, 837 Fed. Appx. 112, 114 (3d Cir. 2020). "Collateral attack" and "collateral challenge" are understood to have the same meaning. *See United States v. Escobales*, 218 F.3d 259, 260 (3d Cir. 2000).

5

termination of his supervised release by a collateral challenge, the language within the plea agreement should have been more precise and was confusing.  *See James*, 928 F.3d at 252.

II.

With the threshold issue of DeSanto's post-sentencing waiver addressed, this Court will now address the merits of DeSanto's motion.  First, DeSanto satisfies the minimal factors under Section 3 60.20(c) of the Guide to Judiciary Policy.[4]  That is (1) he is not a career drug offender; (2) he has not been convicted of a sex offense or an act of terrorism; (3) he does not present a risk of harm "to the public or victims;" (4) he has no reported violations of his supervised release; and (5) he has demonstrated "the ability to lawfully self-manage beyond the period of supervision."  Beyond those factors, DeSanto is gainfully employed as an intervention specialist at a hospital, helping those suffering from addiction overcome their afflictions, and he has been sober for the past four years.  And DeSanto engaged in appropriate prosocial activities and receives sufficient prosocial support through his work as an intervention specialist.

The Government's second argument against terminating DeSanto's supervised release is that the § 3553(a) factors weigh against early termination.  The nature and circumstances of DeSanto's offense are serious and heinous; he was a "street-level distributor" for a drug

---

[4] The criteria are:

> (1) The person does not meet the criteria of a career drug offender or career criminal as described in 28 U.S.C. § 994(h) or has not committed a sex offense or engaged in terrorism; (2) The person presents no identified risk of harm to the public or victims; (3) The person is free from any court-reported violations over a 12-month period; (4) The person demonstrates the ability to lawfully self-manage beyond the period of supervision; (5) The person is in substantial compliance with all conditions of supervision; and (6) The person engages in appropriate prosocial activities and receives sufficient prosocial support to remain lawful well beyond the period of supervision.

*See United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020) (quoting *United States v. Davies*, 746 F. App'x 86, 88-89 (3d Cir. 2018)).

trafficking organization which sold heroin in Monmouth and Ocean Counties, (Presentence Report (PSR) ¶21); and DeSanto has a prior drug distribution conviction, (*Id.* a ¶43); all of which weigh against early termination. To the contrary, all of his criminal history happened when his addiction to opiates was out of control. (*Id.* at ¶89). DeSanto's terms of imprisonment and supervised release appear to have "afford[ed] adequate deterrence to criminal conduct," protected the public, and rehabilitated the defendant. DeSanto appears to have turned his life around, and he now works to fight drug addiction rather than fuel it through drug distribution. Finally, the supervised release of DeSanto was relatively uneventful, and under the totality of the circumstances, the § 3553 factors weigh in his favor.

## **ORDER**

For the above reasons and considerations;

**IT IS** on this 7th day of March, 2022;

**ORDERED** that the motion by Defendant to terminate supervised release is granted.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.